UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHARLES R. STOLL,

                              Plaintiff,

      v.                                              Case # 18-CV-1385-FPG
                                                        DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

## INTRODUCTION

Plaintiff Charles R. Stoll brings this action pursuant to Titles II and XVI of the Social Security Act seeking review of the denial of his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

Plaintiff protectively applied for DIB and SSI on December 8, 2014, alleging disability since June 9, 2012 based on anxiety, panic attacks, and herniated discs in lower back with nerve damage. Tr.[1] 78-79, 158-70, 187. After the Social Security Administration ("SSA") denied his application, Plaintiff testified at a hearing before an Administrative Law Judge ("ALJ"). Tr. 67-74. On August 3, 2017, the ALJ issued an unfavorable decision. Tr. 12-27. After the Appeals Council denied Plaintiff's request for review, the SSA's decision became final and Plaintiff appealed it to this Court. Tr. 1-5; ECF No. 1. This Court has jurisdiction to review the SSA's final decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 13, 17. For the following reasons, Plaintiff's motion is GRANTED,

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 7.

1

the Commissioner's motion is DENIED, and this matter is REMANDED for further administrative proceedings.

## LEGAL STANDARD

### I.   District Court Review

When a district court reviews a final decision of the SSA, it does not "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Rather, the court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted).  The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II.   Disability Standard

To determine whether a claimant is disabled within the meaning of the Social Security Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him to perform the requirements of his past relevant work; and (5) whether the claimant's RFC permits him to perform alternative substantial gainful work which exists in the national economy in light of his age, education, and

work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *Parker v. City of New York*, 476 U.S. 467, 470-71 (1986); *see also* 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's benefits application using the process described above.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.  Tr. 17.  At step two, the ALJ found that Plaintiff had the severe impairment of degenerative disc disease and the nonsevere impairment of anxiety.  Tr. 19.  At step three, the ALJ found that none of Plaintiff's impairments met or medically equaled the criteria of any Listings impairment and determined that Plaintiff retained the RFC to perform light work with additional physical restrictions.  Tr. 19-21.  At step four, the ALJ found that Plaintiff was not able to perform any past relevant work, and at step five, the ALJ found that Plaintiff could adjust to other work that exists in significant numbers in the national economy.  Tr. 21-22.  Accordingly, the ALJ found that Plaintiff was not disabled.  Tr. 21-23.

### II. Analysis

Plaintiff argues that the ALJ improperly evaluated the opinion of his treating mental health counselor and, as a result, erroneously found Plaintiff's mental impairments to be non-severe at step two.  The Court agrees.

Under the SSA's regulations, an impairment is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c). "[T]he threshold for establishing a severe impairment at step two is extremely low and an ALJ should only deem an impairment non-severe if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work."

*Monroe v. Berryhill*, No. 17 Civ. 3373 (ER)(HBP), 2018 U.S. Dist. LEXIS 124675, at *55-56 (S.D.N.Y. July 24, 2018) (quoting other sources) (internal quotation marks omitted). In other words, the "analysis at step two is a threshold test designed to screen out *de minimis*" or "totally groundless claims." *Benoit v. Saul*, No. 3:19-cv-00443 (WIG), 2019 U.S. Dist. LEXIS 197483, at *9 (D. Conn. Nov. 14, 2019); *Cooper v. Berryhill*, No. 17-CV-6782-JWF, 2019 U.S. Dist. LEXIS 42766, at *4 (W.D.N.Y. Mar. 15, 2019).

Here, as of his hearing date, Plaintiff had been regularly treating with Jennifer Przynosch, LCSW, twice a month for over two years. The record contained two opinions from Ms. Przynosch: (1) an initial evaluation completed on January 27, 2015, the first day she saw Plaintiff, and (2) a mental impairment questionnaire completed on January 20, 2017. Tr. 278-83, 299-310.

In the first evaluation, Ms. Przynosch noted that Plaintiff complained of generalized anxiety as well as depression. Tr. 278. He reported panic attacks on a daily basis which caused him to avoid going out and to isolate himself in his room, often up to five days at a time. Tr. 278. Plaintiff also endorsed sleep disturbance, nightmares, and flashbacks as a result of witnessing physical violence and a traumatic dirt bike accident six years ago. Tr. 278. On exam Ms. Przynosch found a fearful affect; an uneasy, anxious, and fearful mood; and an unkempt, bizarre appearance. Tr. 278-79. She diagnosed Plaintiff with posttraumatic stress disorder, opiate dependence in full sustained remission, cannabis abuse, and as having "problems relating to the social environment; occupational." Tr. 283. She assessed a GAF score of 45. Tr. 283.

In the second evaluation, Ms. Przynosch opined that Plaintiff had "marked" restrictions in performing activities of daily living and "marked" difficulties in maintaining social functioning. Tr. 303. She noted upon exam signs and symptoms of difficulty concentrating or thinking, hostility and irritability, and sleep disturbance. Tr. 299. She felt that Plaintiff's impairments or treatment

would cause him to be absent from work more than three times a month. Tr. 301. Ms. Przynosch also opined that Plaintiff had poor or no ability to: (1) maintain attention for two-hour segments; (2) interact appropriately with the general public; (3) maintain socially appropriate behavior; (4) maintain regular attendance and be punctual within customary, usually strict, tolerances; (5) sustain an ordinary routine without special supervision; (6) work in coordination with or proximity to others without being unduly distracted; (7) complete a normal workday and workweek without interruptions from psychologically-based symptoms; (8) perform at a consistent pace without an unreasonable number and length of rest periods; (9) accept instructions and respond appropriately to criticism from supervisors; (10) get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; (11) respond appropriately to changes in a routine work setting; (12) deal with normal work stress; (13) understand, remember, and carry out detailed instructions; (14) set realistic goals or make plans independently of others; and (15) deal with stress of semiskilled and skilled work. Tr. 302-03. She again noted a GAF score of 45. Tr. 299.

The ALJ gave Ms. Przynosch's opinions little weight. Tr. 18. She discredited them partially because none of Ms. Przynosch's treatment notes were in the record. Tr. 18. She also reasoned as follows:

> Despite such a reportedly low level of functioning, however, the claimant continues to be seen only once or twice per month for counseling and his psychotropic medications have remained the same (B4F; B9F). If, in fact, the claimant had such little ability to function as opined by Ms. Pryzynosch [sic], it is likely that he would have been referred for additional or more frequent treatment and that additional medications would have been trialed in an effort to improve his functioning. This functional assessment is not consistent with the treatment record supplied, which is only the claimant's initial consultation.

Tr. 18.

The Court agrees with Plaintiff that the ALJ improperly evaluated Ms. Przynosch's opinions. First, the absence of her treatment notes in the record created a gap that the ALJ was

5

obligated to fill.  *See Yarger v. Comm'r of Soc. Sec.*, No. 18-cv-489-EAW, 2019 U.S. Dist. LEXIS 71041, *17-18 (W.D.N.Y. Apr. 26, 2019) (holding that the "ALJ had a duty, independent of Plaintiff and her counsel, to ensure that the record was complete so that he could make a determination that is supported by substantial evidence").  The Commissioner argues that the ALJ fulfilled her duty to develop the record by twice requesting records from Ms. Przynosch, but as Plaintiff points out, the ALJ only made the two requests in January and February 2015, before the two years of treatment notes were generated and before Ms. Przynosch rendered her 2017 opinion.  Tr. 229-31.

Further, as Plaintiff argues, the ALJ's suggestion that Plaintiff would have been referred for additional treatment or medications if his condition really was as severe as Ms. Przynosch opined it was is purely conjectural.  *See Arias v. Saul*, No. 18-cv-1296(KAM), 2020 U.S. Dist. LEXIS 72957, at *25 (E.D.N.Y. Apr. 25, 2020) ("Any assumption that additional or more aggressive treatments existed for plaintiff's condition was pure conjecture on the ALJ's part, and merely underscores the necessity of medical expert opinion evidence.").

Thus, the Court finds that the ALJ's reasons for rejecting Ms. Przynosch's opinions were flawed.  *See Healy v. Comm'r of SSA*, No. 18-CV-1050L, 2020 U.S. Dist. LEXIS 13201, at *12 (W.D.N.Y. Jan. 27, 2020) (remanding where court found ALJ's reasons for rejecting licensed mental health counselor's opinion were flawed).  The error here is not harmless, because the ALJ did not consider Plaintiff's mental impairments beyond step two and did not incorporate them into her RFC determination.  *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order) ("Having found that any functional limitations associated with [plaintiff's] mental impairment were mild and only minimally affected her capacity to work, the ALJ did not

take these restrictions into account when determining her residual functional capacity. Accordingly, in this case, the error made by the ALJ at step two was not harmless.").

Finally, even if the ALJ had properly found that Plaintiff's mental impairment was nonsevere, it would still be necessary to remand this case for further consideration because the ALJ failed to account for Plaintiff's mental limitations when determining his RFC. "A[n] RFC determination must account for limitations imposed by both severe and nonsevere impairments." *Id.* Here, the ALJ did not discuss Plaintiff's nonsevere mental impairments in crafting the RFC. Accordingly, remand is required.

## CONCLUSION

For all of the reasons stated, Plaintiff's Motion for Judgment on the Pleadings (ECF No. 13) is GRANTED, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 17) is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g); § 1383(c)(3). The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: June 2, 2020
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court